YOUNG VS. MILES and another.

*Replevin for plaintiff's share of grain stored in mass—Evidence—Hearsay.*

20 615
78 187
20 615
90 630

1. Where grain belonging to different owners has been stored in mass with their consent, each may, if necessary for the maintenance of his rights, maintain replevin for his share, subject to deduction of his proportion of loss or waste occurring to it while so in mass.

DOWNER, J., expresses no opinion on this point.

2. Plaintiff being the owner of a certain quantity of wheat, which, with his consent, was stored in mass with that of others in a warehouse, after shipments had been made from the mass until a quantity not greater than that due him was left, this was his absolute property as against the warehouseman; and any invasion of that quantity by the latter was a wrongful conversion, and plaintiff might follow the wheat wherever it could be identified.

3. Statements as to what appeared from witness's books, where it was not shown that he kept the books himself, nor that the entries were made by him or in his presence, nor that he had any personal knowledge of the facts, *held* to be mere hearsay.

APPEAL from the Circuit Court for *Milwaukee* County.

Replevin for a quantity of wheat. The complaint alleges that on and before July 6th, 1864, plaintiff was the owner of 1500 bushels of No. 1 spring wheat, of the value, &c., in the possession of one Wm. H. Robinson, as warehouseman, at his warehouse in Waubashaw, Minnesota, and was entitled to the immediate possession of it; that he continued to be such owner, and entitled to possession, at the commencement of this action; and that defendants, on said 6th of July, took the wheat from the possession of said Robinson at Waubashaw, and brought it to the city of Milwaukee, in this state, and there, on the 8th of the same month, refused to deliver it to plaintiff, &c. &c. Answer, a general denial.

In 1863 and 1864, Robinson was employed to buy wheat for the plaintiff at Waubashaw, to be stored in his warehouse at that place; the agreement being that it should be stored with other grain received at the warehouse for other owners, about the same time, of the same quality by inspection. From the 26th of January, 1864, down to the commencement of the ac-

tion, plaintiff held a warehouse receipt from Robinson of the former date (No. 41) for 4138 bushels No. 1 spring wheat, on which were endorsed receipts as follows: July 5th, 1864, 1206 bushels; July 8th, 1864, 1409 bushels. Between said January 26th and the 13th of June following, Robinson purchased for himself and stored in said warehouse some 2000 bushels of wheat, and large quantities for other parties, including the plaintiff, all of which was stored in a common mass. He did not buy any wheat for the defendants. On the 10th of June, 1864, he telegraphed to them to sell 4000 bushels to be delivered to them at Milwaukee during that month; and on the 11th of the same month wrote to them as follows: "I shall ship wheat to apply on the 4000 bushels as soon as I can get barge. I expect to start east the fore part of next week, and while gone leave my business with Mr. Crawford; please pay his drafts the same as you would mine. I gave draft to-day for $175.17; shall have to draw about Wednesday, for $1,411.09; will try to have the wheat on before the draft is presented; if not, please ·take care of it, as the wheat will soon be in." On the 13th of the same month he left Waubashaw for the east, and was gone six or seven weeks, leaving his business in the hands of his brother, and of his book-keeper, J. C. Crawford; giving his brother "no particular power," but authorizing Mr. Crawford to draw drafts and attend to his general correspondence. He testifies that when he left there were four or five thousand bushels of wheat in the warehouse; that he supposed then there was enough and more than was necessary to fill all outstanding receipts; but as it turned out, there were a few bushels short; that he instructed his agents to ship wheat to Nichols & Co., of Chicago, and to the defendants. On the 14th, Crawford drew on the defendants, in Robinson's name, for $500; but it does not appear that any further advances were made or moneys paid by the defendants, nor that any wheat was delivered on said sale until July. Only about $200 worth of wheat was received into the

warehouse during Mr. Robinson's absence, and this was on his own account. On the 7th of July, plaintiff served on the defendants the following notice : " I claim as owner under warehouse receipt issued by W. H. Robinson, of Waubashaw, in January last, the 1500 bushels of wheat, or thereabouts, shipped by said Robinson from Waubashaw, Minn., on board the barge ' Federal Union,' on the 4th or 5th inst., and transshipped at La Crosse on the 6th inst., into cars Nos. 1002, 278, 996 and 836, for your account; and hereby beg leave to notify you that I shall look to you for the value of said wheat, if appropriated by you or to your use." On the 8th he further notified them that finding said wheat had arrived at Milwaukee, he demanded "formal delivery of the same," as his property.

As to the ownership of the wheat in Robinson's warehouse between June 8th and July 5th or 6th, there was further testimony as follows: Mr. Nickels, for the plaintiff: "I was at Waubashaw in July, 1864; went there in the employ of *Mr. Young*; visited the warehouse of Mr. Robinson in June, 1864; was there about the 1st, 8th, 15th and 21st of June ; was there in July ; was in the warehouse with Mr. Robinson on the 8th of June; he conversed with me as to who owned the wheat in the warehouse." *Question* : " State the conversation." Objecttion by the defendants, overruled. *Answer :* " I was at Red Wing; Mr. Robinson sent for me to come down; he wanted me to come and get the wheat out; said he had got it all out except what belonged to *Mr. Young* ; wanted me to get barges and take the wheat away, as he wanted to go east; told him I could not get barges. The wheat was all collected in one heap. *He said it all belonged to Mr. Young*; that it might run two hundred bushels short or so, but he had enough at Reed's Landing to make it good. I was there the 21st of June ; the wheat was then in the same condition. I did not ship it." Mr. Robinson, for the defendants, testified that between January 26, 1864, and July of that year, he shipped out of his ware_house at Waubashaw over twenty thousand bushels of wheat,

and specified, among other shipments, the following to M. S. Nichols & Co., Chicago: April 20, 600 bushels; May 10, 2123 bushels; June 1, 986 bushels; June 7, 453 bushels. As a a witness for the plaintiff he said: "I understand that *Miles & Armour* held or claimed to hold a warehouse receipt for about 1500 bushels, issued in my name during my absence [above spoken of.] The consideration claimed by them for this receipt was a balance of account for grain ordered by me to be sold by them in Milwaukee market to arrive [viz., the 4000 bushels above named.] I understand there was a shipment out of my warehouse on account of that receipt; if so, it was a part of the wheat I intended to be covered by the [plaintiff's] receipt [of January 26, above set forth.] * * Since my return I have received from *Miles & Armour* a statement of account showing the amount for which this wheat sold, and that the amount thereof was passed to my credit." The defendant *Miles*, as a witness for the plaintiff, testified that defendants received wheat of Robinson in July, shipped to them to repay advances on account; that he did not know of his own personal knowledge how it was shipped from Waubashaw, or what barge it was shipped in; thought they had a bill of lading, but did not know where it was now. "We received no notice of *Mr. Young's* claim until after I received the wheat from the railroad; received notice before I took it from the elevator." "The notices I received from *Mr. Young* gave the numbers of the cars of the wheat I received from Robinson. We received no other wheat from him about that time." Defendants admitted that the quantity of wheat received was 1435 bushels of No. 1 wheat. L. P. Higby, for the plaintiff, testified that he received into the elevator at Milwaukee, about the 7th or 8th of July, 1864, wheat from cars numbered 1002, 278, 996 and 836, from La Crosse, consigned to the defendants. "It appears from my books that it was consigned to W. H. Robinson, from Waubashaw; that it was 1435 bushels of No. 1 wheat; and that it was shipped by the barge 'Federal Un-

ion.'" This sentence was objected to by the defendants, "which objection," the printed case states, "was overruled, and the testimony declared by the court to be hearsay and inadmissible, unless sustained by competent testimony of the consignment, etc., from officers of the railroad company or others; and that the jury would understand that it was admitted upon that condition." It does not appear that any such evidence of the consignment, etc., was subsequently introduced. On cross-examination Mr. Higby said: "'The entries in the book are in the handwriting of some of my clerks; I know nothing of the matter except from the book." A motion by defendants to exclude the evidence of Higby, was denied. Witness further said: "I know that the wheat which went into the elevator was delivered to *Miles & Armour.*" One Hooker, for the plaintiff, was asked what was the value of wheat in Milwaukee on the 7th of July, 1864. An objection by defendants was overruled, and the witness answered, "$2.20 or $2.21 per bushel; freight from Waubashaw to Milwaukee at that time was about thirty-two or thirty-three cents per bushel."

The circuit court gave the following instructions to the jury, at plaintiff's request: 1. "If you find that the wheat in the warehouse had been separated, or in other words, that a quantity equal to or less than that mentioned in the receipt endorsed to Young had been set apart or become separated from the general mass for Young's benefit, then the fact that all the wheat had been mixed in mass by consent becomes immaterial." 2. "If Robinson left a quantity of wheat in the warehouse for *Young's* benefit, and to meet the receipt, that would be such a separation as would enable *Young* to maintain an action therefor." 3. "Robinson's declaration that the wheat remaining in the warehouse belonged to *Young*—if the jury find such declaration was made—is competent evidence, and proper to be considered in determining the question of a separation." For the defendants, the following instructions were given: "1. To

entitle the plaintiff to recover under the pleadings, the jury must find that he was the owner, or lawfully entitled to the possession, of the identical wheat received by the defendants. 2. If W. H. Robinson was engaged at Waubashaw in buying and selling wheat on his own account, and was also the proprietor of a warehouse at the same point, engaged in buying and selling, and receiving into his warehouse, wheat for various parties, if the wheat so purchased and sold or received by him was put into one pile or bin, and mixed up indiscriminately ; and if the wheat in question formed a part of the general mass or pile ; and if Robinson, after the date of the warehouse receipt read in evidence by the plaintiff, did at various times ship from said warehouse to various parties from said general mass an amount far exceeding the quantity mentioned in said warehouse receipt ; then the plaintiff cannot recover under the pleadings, unless he establish by competent evidence that the identical wheat received by these defendants had been separated from said general mass, and set apart expressly for him. 3. As between the plaintiff and the defendants, the title to the wheat in question did not and could not pass to him, unless there was a specific identification in some way of the particular wheat in question."

The court *refused* the following instructions asked by the defendants : "1. If the wheat received by the the defendants came from the warehouse of W. H. Robinson, in Waubashaw, and was shipped by him, or by his directions, to them for advances made, defendants are entitled to hold it as against the plaintiff, unless he shows that the identical wheat so received was bought with his money, and for him. 2. If the plaintiff expressly agreed that the wheat covered by his warehouse receipt might be mixed with other wheat of the same quality put in said warehouse about the same date, he has by his own act destroyed the identity of the property, and cannot maintain his action, unlesss he shows that prior to the shipment from Waubashaw of the wheat in dispute, the same had been

separated from the general mass by the act of the plaintiff or his authorized agent."

Verdict for the plaintiff; motion to set it aside overruled; and judgment upon the verdict; from which the defendants appealed.

*Finches, Lynde & Miller,* for appellants, to the point that replevin cannot be maintained for grain which has been confused, with the owners consent, with other grain, so as no longer to be capable of identification, cited *Low v. Martin,* 18 Ill., 286 ; *Dillingham v. Smith,* 30 Me., 370 ; *Loomis v. Green,* 7 Greenleaf, 386 ; *Lupton v. White,* 15 Ves., 432 ; *Scudder v. Worster,* 11 Cush., 573 ; *Hutchinson v. Hunter,* 7 Barr, 140 ; *Golder v. Ogden,* 15 Pa. St., 528 ; *Waldo v. Belcher,* 11 Ired., 609 ; *Merrill v. Hunnewell,* 13 Pick., 213. 2. Even if there was any legal proof of certain wheat having been set apart for the plaintiff on the 8th of June, the identity of this wheat was destroyed by the fact that $200 worth of other wheat was afterwards received on Robinson's own account, and thrown into the common mass. 3. There is no evidence that the defendants ever received any wheat from the *warehouse* of Mr. Robinson at Waubashaw. For any thing that appears in the case, we may even say that the wheat seen by Nickles in that warehouse on the 8th of June is still there. 4. The court erred in admitting that part of Higby's evidence where he testified as to what appeared from his books; the same being mere hearsay, as it does not appear that the books were kept by the witness, or the entries made by him or in his presence, or at or about the time of the transaction in question; and he had no personal knowledge of the facts. *Halsey v. Sinsebaugh,* 15 N. Y., 485 ; *Russell v. Hudson River R. R. Co.,* 17 N. Y., 134.

*Emnons & Van Dyke,* for respondent, to the point that the deposit of the wheat by *Young* gave him such a title to his share that he could maintain replevin before separation, cited *Gardner v. Dutch,* 9 Mass., 407. Replevin can be maintained

after a separation. *Scudder v. Worster*, 11 Cush., 578. Defendants, not having deposited any wheat, cannot raise this question. *Jackson v. Hale*, 14 How. (U. S.), 525. If all the wheat but Young's had been shipped out, it would work a segregation of his wheat. *Horr v. Barker*, 6 Cal., 489. The warehouseman could not, by intermingling his wheat, destroy this separation. *Low v. Martin*, 18 Ill., 286.

DIXON, C. J.   I am happily relieved from entering into any lengthy discussion of the principal question presented by this case, which is, whether replevin can be maintained for the wheat, or rather the quantity of wheat, specified in the receipt, after its intermixture with the wheat of Robinson in the warehouse.   The authorities are in clear and palpable conflict. According to some, it can; according to others, it cannot.   I need refer only to *Kimberly vs. Patchin*, 19 N. Y., 330, and *Scudder vs. Worster*, 11 Cush., 573, which are the two leading American cases.   The opinions in both are elaborate and well considered, the previous decisions reviewed, and all the law and the doctrine for and against ably stated and discussed. They are in fact the only cases necessary to be consulted to obtain a proper understanding of the question and of the decisions of the courts.   The former is a decision in the affirmative; the latter in the negative.   I assent most fully to the views expressed in the former, and think that the action can be maintained.   The doctrine of the Court of Appeals, sustained as it is by many adjudications, seems to me the more rational and sound.   It is, in substance, as to articles of this nature, wheat and the cereal grains and the flour manufactured from them, wine, oil and the fruits of the earth, which are sold, not by a description which refers to and distinguishes the particular thing, but in quantities which are ascertained by weight, measure or count, and which are undistinguishable from each other by any physical difference in size, shape, texture or quality, that there may be different owners of a common mass,

each having a separate property in his share, and each entitled to sever it from the share or shares of the others, and, if necessary for the preservation of his rights, to maintain replevin for the same, subject to deductions for any loss or waste properly falling to his share while the property remained in the mass. In support of this doctrine I can add nothing to the reasoning of Judge COMSTOCK, which is so convincing to my mind. Were I to say anything, it would be but repetition, and that is tiresome and unnecessary. I am content to refer to his opinion, and to one authority not cited by him, but which is found in *Scudder vs. Worster.* In *Gardner vs. Dutch*, 9 Mass., 407, replevin was maintained for 76 bags of coffee, part of 396 bags of the same kind, the residue of which belonged to other persons, and from which the 76 bags were not distinguished by marks, nor had they ever in any manner been separated.

In my judgment, therefore, there is no difficulty in the way of the plaintiff's maintaining his action in this form. Having deposited so many bushels of wheat in the warehouse, to be mixed with other wheat of like quality, he continued to be the owner of the same number of bushels, to be taken from the mass after the mixture. He was entitled to a delivery of it at any time upon complying with the conditions of the receipt. He might have separated it himself, or Robinson might have done so; or if Robinson had refused to separate and deliver it, or to allow him to separate it, he might have replevied it out of the warehouse. The plaintiff being the owner of so many bushels of the wheat, a proper construction of the receipt required Robinson to keep that number of bushels always on hand to answer the receipt; and if at any time he sold or took from the common quantity, so as to leave only enough or less than enough of the same quality of wheat in the warehouse to satisfy the receipt, it follows that, as between him and the plaintiff, the wheat so remaining became the absolute and exclusive property of the plaintiff. This would have been what may be termed an act of separation by Robinson; that is,

the exercise by him of his right to take the portion of the mass which belonged to him ; but in doing so he was bound to respect the rights of the plaintiffs, and accountable if he invaded them.    And if he did partially invade them in the first instance, that gave him no authority to go further and remove or dispose of the residue.    So far as he invaded the quantity of wheat belonging to the plaintiff, first or last, it was a wrong and a conversion, and the plaintiff might follow his wheat wherever the same could be identified.

Mr. Justice COLE concurs in these views, which seem to meet and sufficiently obviate the exceptions taken to the charge, and to show that there was no error in giving or refusing instructions.

Mr Justice DOWNER, although he agrees with us'that this action can be maintained for the wheat which remained in the warehouse, the same being less than the quantity to which the plaintiff was entitled under the receipt, and that there was no error in giving and refusing the instructions, nevertheless thinks we are not called upon to go so far as to say that the plaintiff might have maintained replevin before there was an actual separation.    He holds that the action may be maintained upon the doctrine of segregation, as laid down in *Horr vs. Barker*, 6 Cal., 489.    He is perhaps strictly correct in saying that we are not required to hold that the action could have been maintained before the separation.    But I am unable to discover any difference between the doctrine of segregation and the right of separation as laid down by Judge COMSTOCK ; and if there is none, then I can see no impropriety in proceeding at once to the examination of the principles which lie at the foundation of both, and which involve the rights and liabilities of the parties as they existed before the separation was made.

But though we are of opinion that the action can be maintained, and that there was no error in the instructions, still the judgment must be reversed for the improper admission of testimony.    The testimony of the witness Higby, introduced for

the purpose of showing that the wheat in the cars was the same which was shipped from the warehouse of Robinson at Waubashaw, was hearsay, and nothing but hearsay. As such, it should have been excluded upon the motion of the defendants.

*By the Court.*—Judgment reversed, and a new trial awarded.

Note.—The plaintiff moved for a rehearing on the grounds, 1. That Mr. Higby's testimony, so far as objected to, was not in fact submitted to the jury. 2. That if it was, the error was unimportant, there being, aside from that, ample proof of the identity of the wheat delivered to defendant. 3. That the bill of exceptions did not profess to give all the evidence, notwithstanding a statement to that effect in the printed case. The motion was denied. Rep.