## NELSON v. BROWN, DOTY & CO.

1. **Bailment:** SALE OF GRAIN. A contract acknowledging the receipt of grain for storage, "loss by fire and the elements at the owner's risk," with the option to the party receipting for it to return grain of equal test and value, constitutes a contract of bailment, which is converted into a sale whenever the bailee disposes of the grain.

*Appeal from Tama District Court.*

FRIDAY, OCTOBER 20.

THE plaintiff claims as the assignee of seven contracts, executed by defendants, of one of which a copy is as follows:

"Received of C. C. Cowell for Thompson in store for account and risk of C. C. Cowell, one hundred and eighty-three bushels No. 3 wheat, loss by fire, heating and the elements at owner's risk. Wheat of equal test and value, but not the identical wheat, may be returned." The other six contracts are the same, except as to amount of wheat delivered, and the parties named as delivering the same. The petition alleges that defendants have failed and refused to perform their contract.

The answer alleges, "That at the time of the execution of the contracts set forth in said petition, the defendants were engaged in the business of buying, selling and storing for hire, grain at Dysart, Tama county, and in their said business owned and used an elevator building at the place aforesaid; that in their said business it was impossible to store and keep in separate parcels the grain delivered to them by their various customers, but it was necessary to mix the grain of different parties by placing the same in common bins, and it was and is the custom of warehousemen at said place, receiving grain belonging to different parties, to so place the same in common bins, and that the customers of the defendants, including the plaintiff and all the parties to whom the said receipts were issued, had full knowledge of said facts and of said custom, and consented that their wheat should be so stored by the defendants; that, with a full knowledge of such facts

and of said custom, the plaintiff and the other parties named in the receipts sued on herein stored and caused to be stored, in the aforesaid elevator of the defendants, the grain mentioned in said receipts therefor, copies of which are set forth in the petition.

And the said grain was, in accordance with said custom, stored in common bins with the wheat of other parties of equal test or value, at the risk of the respective owners mentioned in said receipts, storing the same, as to loss by fire, heating, etc. And that thereafter, and while said wheat was so in store in said elevator and before any demand therefor, and while the same was being housed and cared for by the defendants with all reasonable diligence, and without any fault or negligence on their part, the said building with the wheat therein, including that sued for herein, was destroyed by fire."

The plaintiff demurred to this answer. The demurrer was sustained. Defendants appeal.

*Stivers & Leland,* for appellant.

*Struble & Goodrich,* for appellees.

DAY, J.—We have held that, where grain is deposited with a warehouseman with the understanding that he is to ship and sell it on his own account, and when the depositor desires to sell the warehouseman will pay the highest price or return a like quantity and quality, the transaction constitutes a sale, and the property passes to the warehouseman. *Johnston v. Browne,* 37 Iowa, 200.

The contract in question provides that "wheat of equal test and value, but not the identical wheat, may be returned." This

1. BAILMENT: sale of grain. clearly gives the warehouseman the right to dispose of the wheat deposited on his own account, and, if there were no other provisions in the contract limiting and qualifying this provision, it would bring the case fully within the principle of *Johnston v. Browne,* and the wheat, from the time of the deposit, would be at the risk of the warehouseman. But, in order to get the exact sense and true meaning of the contract, all of its provisions must be construed

together. The contract further provides that the wheat is received in store "for account and risk of C. C. Cowell, * * * * loss by fire, heating and the elements at owner's risk." As the wheat is at the risk of Cowell, it is evident that he is the party who is alluded to in the contract as owner. To hold that, because the warehouseman was not under obligation to return the identical wheat, the transaction in law became a sale, and hence Brown, Doty & Co. are the owners, at whose risk is loss by fire, heating and the elements, would do violence to the evident intention of the parties.

The meaning of the whole contract taken together is clearly this: That so long as the wheat remains in the elevator, loss by fire, heating and the elements is at the risk of the depositor. In other words, so long as the wheat is kept in the elevator, though thrown in a common bin and mingled with other wheat of like quality, it is a mere bailment. But the warehouseman is not under obligation to retain the wheat of the depositor in his warehouse. He may, without breach of contract, and without being guilty of a conversion, ship the wheat away on his own account. When he avails himself of this privilege the character of the transaction and the relation of the parties change. There is then a completed sale, and the warehouseman assumes a liability which he can discharge only by payment in wheat of like quality and value, or in money. The wheat does not pass to the warehouseman, and become at his risk, simply because that of a number of depositors, of like grade, is with their consent mingled in a common mass. Upon this subject see *Young v. Miles*, 20 Wis., 615; *Sterns v. Raymond*, 26 Wis., 74; and *Gardner v. Dutch*, 9 Mass., 407.

The answer alleges that the wheat deposited by the respective owners named in the contracts sued on was in the elevator, and with it, without fault or negligence of defendants, was destroyed by fire. These facts constituted a defense, under the contract of the parties.

The demurrer was improperly sustained.

REVERSED.