## First State Bank of Ravenna v. J. C. Barnett.

### Decided December 5, 1907.

**1.—Sale or Bailment.**

Cotton seed, which by agreement between the owner and one ginning the cotton for him, is not delivered specifically to the owner, but passed to the ginner's warehouse and commingled with that of other owners of cotton ginned under arrangement by which each is to receive from the general store the quantity and quality of seed, but not the specific seed, going into it from his cotton, is not thereby sold by the owner to the ginner, but merely made the subject of bailment.

**2.—Same.**

The test whether the commingling of the property of various owners in a warehouse in case of grain and other commodities, constitutes a sale or only a bailment to the warehouseman, is in the answer to the further question whether the warehouseman is given the right to sell it and account to the owner for the value, or the owner has the right to demand the redelivery of specific property of the quantity and value he furnished.

**3.—Same—Mortgage.**

A mortgage by a warehouseman of cotton seed owned and that to be purchased by him conveyed no right to such as was merely deposited with him as bailee though the owner permitted it to be confused with that of others and of the bailee in the latter's warehouse so as to render identification of the specific seed deposited impossible.

**4.—Conversion—Damage—Off-set.**

One liable for the conversion of property can not off-set the damages by his payment of a debt of the injured person for which the property was in no way bound.

Appeal from the County Court of Fannin County. Tried below before Hon. H. A. Cunningham.

*McGrady & McMahon*, for appellant.—Plaintiff having bought of R. L. Barnett the seed in controversy, and paid for same by crediting the amount on a pre-existing debt, is not a bona fide purchaser, nor entitled to hold the seed as against a prior unrecorded mortgage thereon executed by R. L. Barnett to defendant. Overstreet v. Manning, 67 Texas, 657; McKamey v. Thorp, 61 Texas, 643.

Plaintiff having consented for the seed of his cotton to be mingled with seed of R. L. Barnett beyond identification, with the understanding that he was not to receive back either his identical seed nor exact quantity, but was to be merely paid in seed generally of approximately the same quantity, and having consented for R. L. Barnett to use the seed and pay back in seed generally, the title to seed from plaintiff's cotton passed to R. L. Barnett, and left plaintiff a mere unsecured creditor of R. L. Barnett, especially where there was no means of ascertaining with any certainty the amount of seed plaintiff had in the seed of R. L. Barnett still on hand. Bretz v. Diehl (Pa.), 2 Am. St., 706; Chase v. Washburn (Ohio), 59 A. D., 623; Hurd v. West, 7 Cow., 752; Smith v. Clark, 21 Wend., 83; 34 A. D., 213; Woodward v. Semans (Ind.), 21 Am. St., 225; Hall v. Pillsbury (Minn.), 19 Am. St., 209.

*E. L. Agnew,* for appellee.

HODGES, Associate Justice.—The appellee sued appellant in the County Court of Fannin County for damages for conversion of a carload of cotton seed of about 55,000 pounds, which appellee claimed to own. Appellant answered by general denial, and specially pleaded and relied upon the following facts: that on December 5, 1906, one R. L. Barnett was engaged in business at Ravenna, in ginning cotton and buying cotton seed, and was indebted to the appellant, who was furnishing him money with which to make these purchases; that said indebtedness was in the form of over-drafts as the result of checks drawn by said R. L. Barnett on the appellant bank; and that on the day above mentioned said Barnett executed to the appellant an instrument in writing, mortgaging to it all the cotton, seed, wood, bagging and ties, and other personal property connected with his ginning business, and "all this sort of property said Barnett might purchase in the future till his bank account with said bank was fully paid, in consideration of the advances made and that might be made by said bank for purchase money; and all sales of cotton and cotton seed should be made by and through said bank." This instrument, in connection with a verbal agreement between said Barnett and the bank, is claimed to be a mortgage upon the seed in question. Prior to January 12, 1907, appellant had exhausted all other security it had, leaving said R. L. Barnett still owing it over $600 for money so advanced; and on that day, by virtue of its mortgage, took possession of and sold the seed in question, and applied the proceeds on the debt, but that said proceeds were insufficient to pay off and satisfy said debt. It further alleged that if the appellee had any right to the seed it was subsequent and inferior to the appellant's rights and liens; and that if appellee ever owned any part of such seed he had knowingly commingled the same with R. L. Barnett's seed, at the latter's gin and in his possession, so that the same became the property of R. L. Barnett, and the appellant's lien attached thereto. Trial was had before the court without a jury, which resulted in a judgment in favor of the appellee for the sum of $339.50. From this judgment appellant prosecutes this appeal.

The court filed findings of fact and conclusions of law, which, we think, are fully sustained by the evidence. The findings of fact are substantially these: During the season of 1906-07 R. L. Barnett was the sole owner of and operated a gin at Ravenna, in Fannin County, Texas, for the purpose of ginning cotton for the public. He charged, as compensation for ginning, 40 cents per hundred pounds for each 100 pounds of lint produced, and gave his customers all of the seed out of the cotton ginned, allowing 64 pounds of cotton seed to every 100 pounds of seed cotton. As the cotton was ginned the seed, if the owner desired, were caught as they came from the gin, and delivered to the owner; but generally the seed were run from the gin into a large seed house, and the customers were given seed out of this house at the rate above mentioned. J. C. Barnett, the appellee, was a patron of that gin during that season, and had from 54 to 56 bales of cotton ginned, all of the seed being run into the seed house. A bale of lint cotton was produced from about 1,700 pounds of seed cotton. On the

8th day of January, 1907, J. C. Barnett and R. L. Barnett had a settlement by the books of the latter, and it was ascertained that J. C. Barnett was due from R. L. Barnett something over 55,000 pounds of seed. J. C. Barnett thereupon engaged R. L. Barnett to load for him that much seed in a car for shipment; in pursuance of which R. L. Barnett loaded 54,324 pounds of the seed into a car for J. C. Barnett, that amount being all that the car would hold, and notified J. C. Barnett when the seed was loaded, and furnished him with the weigher's tickets showing that that amount had been weighed for J. C. Barnett. The latter paid R. L. Barnett the sum of $9.80, the expense for loading the seed. This lot of seed came out of the seed house, and took all that was in the house except 40 or 50 bushels. After the car was loaded, on January 12, 1907, C. F. Christensen, cashier of the appellant bank, without the knowledge or consent of J. C. Barnett, took charge of the car of seed, shipped the same to Denison, Texas, in the name of the appellant, and sold the same to an oil company at the rate of $12.50 per ton, the oil company paying the freight on the car. The proceeds of this sale were received by the appellant bank and applied to the credit of a claim it held against R. L. Barnett. The court finds that the cash market value of this lot of cotton seed, F. O. B. cars at Ravenna, was $12.50 per ton. Under the findings of the court it is conclusively shown that the appellant did advance money to R. L. Barnett, both before and after making the mortgage alluded to; and that, after applying the proceeds of the sale of the seed in question, there was a balance still due to the appellant from R. L. Barnett for advances made to him under its contract. The facts in the record also show the execution of the mortgage relied on and pleaded by the appellant as its authority for taking possession of the carload of seed. It is further shown, however, that this instrument was never filed for registration, and that the appellee had no actual notice of its existence prior to the seizure of the seed by appellant.

Appellant admits the seizure and conversion of the load of seed, and seeks to justify its course of conduct in so doing upon its rights as a mortgagee of R. L. Barnett's property. It is contended by the appellant that the relation of the two Barnetts, as to the seed in controversy, was merely that of debtor and creditor; that in permitting his cotton seed to be run into a house, and mingled with the seed of R. L. Barnett and other parties, and agreeing that he would take seed therefrom at 64 pounds for each 100 pounds of seed cotton, J. C. Barnett was simply a creditor of R. L. Barnett's for the value of the seed thus deposited, and not a bailor; that all the seed in the common mass became the property of R. L. Barnett. It is then concluded that J. C. Barnett could not rely upon want of notice of the appellant's mortgage, because when he received the seed delivered to him by R. L. Barnett he applied them to the payment of a pre-existing debt, and was not in the attitude of bona fide purchaser without notice, and could assert no such rights. The case turns upon the issue of whether or not the transaction between the Barnetts, one as ginner and the other as customer, was a sale or a bailment. If the relation of debtor and creditor existed between the two Barnetts as to the cotton seed which had been deposited in the seed house of R. L. Barnett, then there must have been a

sale from J. C. Barnett to R. L. Barnett.  If there was a sale, what was the consideration, and when did it occur?  As the evidence conclusively shows, the consideration for what R. L. Barnett was to perform about the cotton—ginning and baling it for market—was 40 cents per hundred pounds of lint, to be paid in money; where he furnished bagging and ties he charged 90 cents per bale more.  Hence, he was to receive no part of the cotton, or of the seed, as his compensation for his services or attention.  The customers were to get all of their seed back, as well as all of their cotton.  This was the understanding under which R. L. Barnett received and ginned the cotton of the appellee and that of all of his customers.  We fail to see any of the elements of a sale in this transaction; on the contrary, we think it clear that it was one of bailment.  The fact that the seed from appellee's cotton was permitted by him to be run into a seed house, and there commingled with the seed of other parties, so that it was impossible for the identical seed to again be delivered to him, did not convert what would otherwise have been a bailment into a sale.  Potter v. Mt. Vernon Roller Mills Co., 73 S. W. Rep., 1005; Bretz v. Diehl, 2 Am. St. Rep., 706; Lyon v. Lenon, 106 Ind., 567; Nelson v. Brown, 44 Iowa, 455; Nelson v. Brown, 53 Iowa, 555; Sexton v. Graham, 53 Iowa, 181; Rice v. Nixon, 97 Ind., 97; 49 Am. St. Rep., 430.  In the case first above referred to it is said: "The circumstances that the identical grain is commingled with other grain, and is not to be returned to the depositor, but a like quantity of the same kind and quality, are not sufficient to convert the contract into a sale."  In the case of Bretz v. Diehl, *supra,* one of those cited and relied on by the appellant, the court there quoted approvingly from another case the following language: "If the dealer has the right, at his pleasure, either to ship and sell the same on his own account, and pay the market price on demand, or retain and redeliver the wheat, or other wheat in place of it, the transaction is a sale; it is only when the bailor retains the right from the beginning, to elect whether he will demand the redelivery of his property or other of like quantity and grade, that the contract will be considered one of bailment.  If he surrender to the other the right of election, it will be considered a sale with an option on the part of the purchaser to pay either in money or property, as stipulated.  The distinction is:  Can the depositor, by his contract, compel a delivery of wheat whether the dealer is willing or not?  If he can, the transaction is a bailment; if the dealer has the option to pay for it in money or other wheat, it is a sale."  The case of Nelson v. Brown, *supra,* in effect holds that, where grain in an elevator is mixed in a common mass with that of other owners, and of a like kind and grade, the depositors become tenants in common of the mass, according to the quantity owned by each, with a right of severance at any time.  The owner of the elevator does not acquire title to the wheat deposited because he may own a portion of the common mass, nor because the wheat in the elevator may have been shipped out and replaced with other wheat.  Let us then apply the test adopted by the decisions referred to for determining whether or not a transaction of the kind here involved is a sale or a bailment—Could J. C. Barnett have demanded of R. L. Barnett the same quantity of seed of like kind and quality as that

deposited? Undoubtedly this could have been done. The fact that 64 pounds per hundred pounds of seed cotton was adopted as the quantity that each customer should receive does not alter the nature of the relations of these parties. This was evidently done as a convenient mode of making distribution among the joint owners of the common mass. That R. L. Barnett could not have discharged his obligation to any of his customers from whom he received seed in the usual way by the tender of their value in money, we think admits of no doubt. This transaction being a bailment and not a sale, J. C. Barnett was not affected by appellant's mortgage.

In his third assignment of error the appellant complains of that portion of the court's findings of fact in which it was found that the market value of the seed in controversy was $12.50 per ton f. o. b. the cars at Ravenna. We think the evidence fully justified the finding made by the court.

The third assignment of error charges that the judgment is excessive, and claims that the court should have deducted $39.00 from the sum awarded to the appellee. This contention is based upon the testimony adduced on the trial, to the effect that in the settlement between the two Barnetts, J. C. Barnett assumed the payment of that sum owed by R. L. Barnett, at that time, to the oil mill that purchased the seed from the appellant; that at the time the seed were sold J. C. Barnett had not paid this amount as he had agreed, and the oil mill, in its settlement with the appellant, deducted that amount from the purchase price of the carload of seed, and applied the sum so deducted to the payment of this assumed debt. It is true this was J. C. Barnett's debt, and was paid in this manner by the appellant; but the appellant was under no compulsion to pay it, and the payment thus made by it was purely voluntary. We do not understand the rule measuring damages for conversion of property, to go so far as to allow the wrong-doer the liberty of paying the debts of the injured party, for which the property converted is in no way liable; and when called upon to make recompense in damages for the value of the property, to offset this claim with the amounts so paid. Such a rule would license the strong to oppress the weak, and would destroy one of the fundamental purposes for which courts of justice are founded.

We are therefore of the opinion that there was no error in the judgment of the court below, and it is accordingly so ordered.

*Affirmed.*