JOHNSTON v. BROWNE *et al.*

**Bailment: WHEN DEEMED A SALE.** Where grain is deposited with a warehouseman with the understanding that he is to ship and sell it on his own account, and when the depositor desires to sell, that the warehouseman will pay the highest price or return a like quantity and quality, the transaction constitutes a *sale* instead of a bailment, and the property will be held to have passed to the warehouseman, and liable to be taken in execution or attachment for his debts.

*Appeal from Tama District Court.*

THURSDAY, OCTOBER 9.

ON the 23d day of September, 1872, the plaintiff commenced an action by attachment against the defendant, W. T. Browne, claiming of him the sum of $2,200, with interest from August 24, 1872.

An attachment was duly issued in said cause and levied upon all the wheat in the elevator at Toledo, to wit: About 2,500 bushels, and about 1,200 bushels of barley in the warehouse at Toledo, the said wheat and barley being attached as the property of the defendant Browne.

At the February term, 1873, the plaintiff recovered judgment against said defendant for $2,264.15 and costs. At the said February term of court the appellees, George W. Free, Jr., Ferdinand Frederick, H. F. Bickett and J. R. Porter, each filed his petition of intervention in said cause.

The intervenor Bickett alleges, in substance, that from about August 29, 1872, to September 5, 1872, he stored with W. P. Browne in his warehouse at Toledo, 644 bushels and 40 pounds of wheat, known as grade No. 2.

That at the time of storing said wheat it was verbally agreed by said Browne and intervenor that if said wheat remained in store longer than one month intervenor should pay storage at the rate of one cent per bushel, and whenever intervenor should conclude to sell said wheat, Browne was to have the same if he would pay as much for it as any one else, and if not, intervenor might sell to any one else.

That on the 23d of September, 1872, plaintiff Johnson caused writs of attachment to be levied upon all the property of said Browne, as well as upon the wheat stored by intervenor with Browne; and Johnson, by virtue of said writ and levy, still holds said wheat.

That on the 25th day of September, 1872, intervenor offered to sell said wheat to Browne for the same per bushel as intervenor could get elsewhere, and Browne refused to buy it at any price, whereupon he demanded said wheat of Browne, and he refused to deliver the same, and was unable to do so by reason of the attachment.

That Browne is insolvent, and has no property liable to execution, except that held by said attachment.

Intervenor prays that the sheriff be directed to deliver to him the amount of wheat by him stored with Browne. The intervenors Frederick, Free and Porter allege that they stored

wheat with Browne in his warehouse at Toledo, as follows : Frederick, 185 bushels of No. 2 wheat; Free, 110 bushels and 10 pounds of No. 2 wheat; Porter, 16 bushels of No. 3 wheat, and 27 bushels of rejected wheat.

That at the time they stored said wheat Browne verbally agreed that he would deliver said wheat whenever they should demand the same.

In other respects the petitions of these intervenors are substantially the same as that of Bickett.

The plaintiff denied all the allegations of the intervenors.

The cause was tried by the court and judgment was entered in favor of the intervenors for the amount of wheat by each respectively claimed.

Plaintiff appeals.

The material facts appear in the opinion.

*Stivers & Safely* for the appellant.

*Applegate & Kinne* for the appellees.

DAY, J. — The intervenor, Bickett, read in evidence two receipts, one of which is as follows :

"TOLEDO, Iowa, *August* 29, 1872.
"Bought of H. F. Bickett, for W. P. Browne, to be delivered at Browne's elevator, if all like sample, ——— of wheat, at $——— in store. ———, buyer. ——— bush. ——— lbs. G. Williamson, weigher."

On the back of this was indorsed the respective number of bushels delivered at various times.

The other receipt was the same, except as to date and indorsements on the back. The testimony shows that the wheat was left with Browne, with the understanding that when intervenor got ready to sell it Browne would give the highest market price, or the same amount of wheat of like grade and quality; that it was the custom of Browne, when grain was stored, to keep a sample of it and ship the grain off and sell it, and to always keep on hand a sufficient amount of grain of

the same quality as that stored to fill all outstanding storage receipts, and when parties who had stored wanted to sell, to buy if he could, and if he could not, to return them wheat of the same grade and quality as that they had stored. He never attempted to keep the identical kernels of grain stored, and it is not the custom among grain warehousemen and grain buyers to do so. The evidence shows clearly that Bickett understood that the identical wheat by him left with Browne was not to be returned; that it would be shipped off and sold, and that Browne would pay him the highest market price, if he desired to sell, or would return other wheat of the same grade and quality.

The authorities almost uniformly hold that a transaction such as this constitutes a sale, and not a bailment. "In case of a regular deposit, the bailee is bound to return the specific article deposited; but when the depositary is to return another article of the same kind and value, or has an option to return the specific article, or another of the same kind and value, it is an irregular deposit or *mutuum*, and passes the property as fully as a case of ordinary sale or exchange." *Chase* v. *Washburn*, 1 Ohio St. 244. In *Norton* v. *Woodruff*, 2 Comst. 155, it is said: "The distinction between an obligation to restore the specific thing received, or of returning others of equal value, is the distinction between a bailment and a debt." In *Carlisle* v. *Wallace*, 12 Ind. 252, Wallace placed in the mill of Carlisle four hundred bushels of wheat, upon terms that the latter was at liberty to mix it with his own, convert it into flour when he pleased, sell the flour and appropriate the proceeds to his own use, and whenever Wallace saw fit he had a right to exact from Carlisle the same quantity in kind of wheat, or the amount of flour so much wheat would make, or the then price of wheat per bushel in money. It was held that, as neither the identical wheat nor the flour made from it was to be returned, and the wheat was to be mixed with that of Carlisle and used by him when he pleased, the contract must be regarded as one of sale and not of bailment. To the same effect are *Norton* v. *Woodruff*, 2 Comst. 155;

*Smith* v. *Clarke*, 21 Wend. 84; *Hurd* v. *West*, 7 Cow. 752; *Baker* v. *Roberts*, 8 Greenlf. 101; *Ewing* v. *French*, 1 Blackf. 354; *Wilson* v. *Cooper & Mason*, 10 Iowa, 565.

In *Norton* v. *Woodruff*, 2 Comst. 155, referring to the case of *Seymour* v. *Browne*, 19 Johns. 44, which recognizes a different doctrine, it is said: "The authority of that case has been often questioned: 2 Kent, 589; Story on Bailments, 193; *Buffum* v. *Merry*, 3 Mason, 478, and the decision was entirely overruled in *Hurd* v. *West*, 7 Cow. 752, and see page 756, note. The case of *Slaughter* v. *Green*, 1 Rand (Va.), 3, is much like *Seymour* v. *Browne*. They were both hard cases, and have made bad precedents."

The case of *Chase* v. *Washburn*, 1 Ohio St. 244, is, in all material respects, like the one at bar.

From the syllabus in that case we quote the following: "Where a warehouseman receives wheat, and, by the consent of the owner, or in accordance with the custom of trade, mixes the wheat in a common mass with the other wheat in his own warehouse, and with the understanding that he is to retain or ship the same for sale on his own account, at pleasure, and on presentation of the warehouse receipt, is either to pay the market price thereof in money, or re-deliver the wheat, or other wheat in place of it, the transaction is not a bailment but a sale, and the property passes to the depositary, and carries with it the risk of loss by accident."

The cases cited by appellee do not conflict with the general doctrine of the above cases. They recognize the principle, of which there can be no reasonable doubt, that where the various owners of property of the same kind, and of equal value, consent to a mixture of the same, and the proportionate shares are known, the loss of identity does not prevent each owner from claiming his proportionate share. Thus in *Young* v. *Miles*, 20 Wis. 615, the plaintiff was the owner of a quantity of wheat, which, with his consent, was stowed in mass with that of others in a warehouse. After shipments had been made from the mass until a quantity not greater than that due

him was left, it was held that this was his absolute property as against the warehouseman, and that any invasion of that quantity by the latter was a wrongful conversion, and that plaintiff could follow the wheat wherever it could be identified.

And, in *Gardner* v. *Dutch*, 9 Mass. 407, replevin was maintained for 76 bags of coffee, part of 396 bags of the same kind, the residue of which belonged to other persons, and from which the 76 bags were not distinguished, and had not been separated.

And, in *Sterns* v. *Raymond*, 26 Wis. 74, it was held that where logs unlawfully cut upon the land of another, are intentionally intermixed by the trespasser with logs of his own, so that the former cannot be distinguished from the latter, the owner of the former may replevy the amount of logs belonging to him, from the common mass.

The case of *Rahilby* v. *Wilson*, Chicago Legal News, February 1, 1873, relied upon by appellee, does not seem to us to differ in principle from those last named. The distinction between these cases and the one at bar is apparent at a glance.

It is clear to us that the transaction between the intervenor and Browne partakes of the nature of a sale, and that the intervenor thereby became a creditor of Browne. Inasmuch as the wheat in the warehouse had never been set apart to intervenor in payment for the wheat by him left with Browne, he acquired no specific lien thereon, but stands in relation to it as any general creditor.

The evidence in the case of the other intervenors, except Porter, does not differ in any material respect from that in the case of Beckett.

In the case of the intervenor Porter, there is no evidence of an agreement to return wheat of like grade. The receipt issued was the same as in the case of Beckett. and that, unexplained, evidences a sale.

The court erred in holding the intervenors entitled to the wheat, as against the attaching creditor.

Reversed.