STATE OF IOWA, Appellee, v. J. C. FOLGER, Appellant.

CRIMINAL LAW: Former Jeopardy—Embezzlements by Agent and
1    Bailee. An acquittal on an indictment which charges the defendant, *as agent,* with the embezzlement of the proceeds of grain delivered to him (Sec. 13031, Code of 1924) is no bar to an indictment which charges the defendant *as bailee* with the embezzlement of the same grain. (Sec. 13030, Code of 1924.)

CRIMINAL LAW: Former Jeopardy—General Test. General principle
2    recognized that an acquittal is a bar to a subsequent prosecution if

proof of the subsequent allegations would have sustained a conviction under the indictment under which acquittal was had; otherwise not.

CRIMINAL LAW: Trial—Province of Jury—Question of Fact. Conflicting testimony relative to the question whether a bailee charged with embezzlement understood that the delivery of the property constituted a sale to him or a bailment necessarily presents a jury question.

CRIMINAL LAW: Trial—Instructions—Custom as Defense—Sale (?) or Bailment (?) Instructions reviewed, and held to fully and adequately present to the jury in a prosecution for embezzlement by a bailee the effect of a usage or custom in the warehousing business to sell the bailment; also to fully and adequately present the question whether the transaction in question was a bailment or a sale.

CRIMINAL LAW: Instructions—Ratification of Wrongful Act. Instructions reviewed, relative to the effect to be given to a ratification by a bailor of the wrongful act of the bailee in selling the bailment, and held to contain nothing of which the accused could complain.

EMBEZZLEMENT: Intent—Inapplicable Instruction. An instruction that "the law presumes a man to intend the reasonable and natural consequences of his act deliberately and intentionally done," given in a prosecution for *embezzlement* by a bailee, is not necessarily erroneous. Instructions reviewed as a whole, and held unobjectionable.

CRIMINAL LAW: Trial—Improper Reception of Evidence—Curing Error. Error in receiving in evidence the improper conclusions of a witness may be cured by striking the same from the record and by specifically cautioning the jurors to wholly disregard the same. (See Book of Anno., Vol. 1, Sec. 11493, Anno. 606 *et 'seq.*)

Headnote 1: 16 C. J. p. 267 (Anno.) Headnote 2: 16 C. J. pp. 265, 266. Headnote 3: 20 C. J. p. 488. Headnote 4: 20 C. J. p. 490. Headnote 5: 20 C. J. p. 491. Headnote 6: 16 C. J. p. 985; 20 C. J. pp. 490, 491. Headnote 7: 17 C. J. p. 326.

Headnote 2: 8 R. C. L. pp. 143, 144. Headnote 7: 26 R. C. L. 1035.

*Appeal from Sioux District Court.*—C. C. BRADLEY, Judge.

OCTOBER 26, 1926.

REHEARING DENIED DECEMBER 17, 1927.

The defendant was convicted of the crime of embezzlement,

and sentenced to the penitentiary at Fort Madison for an inde-
terminate term of five years. From this judgment he appeals.—
*Affirmed.*

*C. W. Pitts* and *Van Oosterhout & Kolyn,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant
Attorney-general, *Charles B. Hoeven,* County Attorney, and *T.
E. Diamond,* for appellee.

STEVENS, J.—I. The indictment in this case charges the
defendant with the commission of the crime of larceny by the
embezzlement of 2,791 bushels of oats, the property of one Mar-
tin Boever, of the value of $781.48, committed

1. CRIMINAL LAW:
former jeopardy:
embezzlements
by agent and
bailee.

on or about April or May, 1922. This indict-
ment was returned by the grand jury of Sioux
County March 26, 1925. A former indictment
charging the defendant with the crime of larceny by the em-
bezzlement of $7,842.80, as agent and bailee of the said Boever,
committed about June, 1923, was returned against him January
13, 1925. Both indictments grow out of the same original trans-
action, but are not based upon the same specific act.

At the conclusion of the testimony upon the first trial, the
jury, by peremptory direction of the court, returned a verdict
of "not guilty." The acquittal of the offense charged in that
indictment is pleaded as a bar to the prosecution upon the pres-
ent indictment. It was the claim of the State, upon the trial
of the first indictment, that, in April and May, 1922, Martin
Boever delivered 2,791 bushels of oats to the defendant, who
then owned an elevator, and was engaged in the grain business
at Alton, Iowa, in Sioux County, in pursuance of an oral con-
tract for the storage thereof; that, in June, 1923, Boever au-
thorized and directed the defendant to sell the oats at an agreed
price, and to ship the same to market; and that, although re-
peated demand was made therefor, the defendant did not pay
the proceeds of the sale to Boever, but continually put him off,
by saying that he had not yet received the returns from the ship-
ment, and that, when he did, he would pay him the amount due.
$500 was subsequently paid by the defendant to Boever, which
he credited upon the purchase price of a large quantity of corn
sold and delivered to the defendant at or about the same time

as the oats. The facts developed upon the trial of the first indictment showed that the oats had in fact been sold by the defendant in September, 1922, and shortly thereafter shipped with other grain to Council Bluffs, and the proceeds received therefrom used by the defendant in his business. The claim of the defendant upon the trial of the first indictment, which is also urged in this case, was that the oats were delivered to, and received by, the defendant from Boever, and placed in the elevator with other grain, without any contract or arrangement for storage, and in pursuance of a trade custom or usage prevailing in that community, and well known and understood by the parties, that the defendant had the right to sell the grain at any time he wanted to, and to settle with Boever on the basis of the *weights,* for which he held scale tickets, and of the market price at the time of settlement. It was, and is, also argued by the defendant that the transaction was, in legal effect, a sale, and not a bailment.

The two indictments are based upon different sections of the Code. The first indictment was based upon Section 13031 of the Code of 1924, which provides that:

"If any * * * agent * * * of any private person * * * except persons under the age of sixteen years, * * * in any manner receives or collects money or other property for the use of and belonging to another, embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle or convert to his own use, without the consent of * * * the owner of the money or property collected or received, * * * is guilty of larceny."

The present indictment is based upon Section 13030 of the Code of 1924, which provides that:

"Whoever embezzles or fraudulently converts to his own use, or secretes with intent to embezzle or fraudulently convert to his own use, * * * goods, or property delivered to him * * * which may be the subject of larceny, shall be guilty of larceny and punished accordingly."

The offenses defined by these sections of the Code are wholly separate and distinct, and neither is included in the other. It will be noted that the first indictment charged the defendant with the larceny of money in his capacity as "agent and bailee." During the trial the defendant moved the court

to require the State to elect whether it would prosecute the defendant as bailee or as agent. Without any ruling by the court, the State elected to prosecute the defendant upon the offense defined by Section 13031. It was conceded by all parties upon both trials that whatever money, if any, the defendant fraudulently converted to his own use was the proceeds of the sale of the oats, together with the proceeds of the sale of a quantity of corn previously delivered to him by Boever. Except for the use of the word "bailee" in the indictment, coupled with the word "agent," as above stated, there is nothing therein constituting a charge of the embezzlement of anything but money. The allegations of the indictment were wholly insufficient to charge the larceny of the oats by embezzlement. The conviction of the defendant of the offense charged in that indictment was sought by the State upon the theory that, when Boever authorized and directed him in June to sell and ship the oats at an agreed price and account for the proceeds, the relation of principal and agent was thereby created, and that whatever the defendant thereafter did was in his capacity as agent. When, however, it was conclusively shown upon the trial that the oats had been sold and delivered to the purchaser by the defendant long prior to June, 1923, and the proceeds of such sale received and appropriated by the defendant and used in the conduct of his business, there was nothing that could have been done under the supposed agency. No grain was sold, or money received or converted by the defendant, as the agent of Boever. Therefore, at the conclusion of the trial, the defendant moved for a directed verdict, which motion the court sustained, upon the ground that the evidence was insufficient, for the reasons indicated, to convict the defendant of the crime charged in the indictment.

The evidence was substantially the same upon the trial of both cases. This, however, is not the test for determining whether a former acquittal of the offense charged in another indictment is a bar to the prosecution of another separate and distinct offense. The test recognized by the authorities generally is whether or not, if the allegations of the second indictment had been proved under the first, there could have been a conviction; or, as stated by Bishop in his work on Criminal Law, Section 1052, Paragraph 2:

2. CRIMINAL LAW: former jeopardy: general test.

"The test is whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction. When there could, the second cannot be maintained; when there could not, it can be."

See, also, *State v. Ingalls*, 98 Iowa 728; *State v. Price*, 127 Iowa 301; *State v. McAninch*, 172 Iowa 96; *State v. Broderick*, 191 Iowa 717. In the absence of statute, it is not necessary, in order to sustain a plea of former acquittal, that it be shown that the offenses charged in the separate indictments are the same. *State v. Price*, supra.

With the foregoing test in mind, can it be said that the evidence offered upon the first trial, which resulted in the acquittal of the defendant, necessarily works the same result in the present instance? The gist of the offense charged in the first indictment was the conversion or embezzlement of money by the defendant, which he received as the agent of Boever. The gist of the offense charged in the present indictment is the fraudulent conversion or embezzlement of a quantity of oats which he received from Boever as bailee. Instead of its being possible to prove both offenses by the same evidence, proof of the offense charged in the first indictment would negative guilt under the second. In other words, proof of agency was indispensable upon the trial of the first indictment, and proof of another element of the transaction that is a bailment was indispensable upon the trial of the present indictment. Not only are the offenses separate and distinct, but evidence which will sustain one would justify, if not require, an acquittal of the other. It must, of course, be conceded that, if the defendant could have satisfied the jury, upon either trial, that the original transaction constituted a sale of the oats to the defendant, or gave him implied authority to sell the same whenever he desired, an acquittal would necessarily have followed. The mere fact, however, that the delivery of the grain to the defendant was the single transaction out of which the separate offenses indirectly arise, is not conclusive, one way or the other. In some cases, the acquittal of one accused of a distinct offense will bar a subsequent prosecution for another offense resulting from the commission of the same act. For example, the acquittal of a father of the crime of rape committed upon a daughter under the age of consent will bar a prosecution for incest. *State v. Jacobson*, 197

Iowa 547. Likewise, the acquittal of one charged with the unlawful manufacture or sale of intoxicating liquors is a bar to a further prosecution for the same offense within the period of the statute of limitations involved in the first indictment. *State v. Reinhard*, 202 Iowa 168. The same is true in certain other cases. *State v. Waterman*, 87 Iowa 255; *State v. Sampson*, 157 Iowa 257; *State v. Speedling*, 199 Iowa 1218. It is clear, therefore, that the plea of former jeopardy is not available to the defendant under the present indictment. The court properly so instructed the jury. *State v. Jamison*, 104 Iowa 343.

II. Another ground of defendant's motion for a directed verdict was that the evidence affirmatively disclosed that the contract under which the oats were delivered to him was a con-

**3. CRIMINAL LAW: trial: province of jury: question of fact.** ditional sale, vesting title in him, and that he had the legal right to market the oats whenever he desired, and to settle with Boever on the basis of the market price whenever settlement was demanded by him. This ground of the motion ignores the testimony of Boever to the effect that he delivered the oats to the defendant under an express oral contract for the storage thereof; that the defendant stated that he would protect Boever against loss by insuring the grain; that he subquently and repeatedly falsely stated to Boever that he shipped the grain in June, 1923, as directed by him, and that he could not settle with him until he received the proceeds of the sale, repeatedly promising payment as soon as they were received. The instructions clearly informed the jury that, if the oats were delivered to the defendant under an arrangement, and without any other contract, by which defendant understood that he was not obligated to return them to Boever on demand, but might later pay him the market price therefor on any date Boever might select, the transaction did not constitute a bailment, and the defendant should be acquitted.

Perhaps reference should here be made to the testimony of various witnesses for the defendant, tending to show the existence in the vicinity of Alton of a custom or usage among grain

**4. CRIMINAL LAW: trial: instructions: custom as defense: sale(?) or bailment(?)** dealers by which grain is received from customers and deposited in elevators with other grain, to be sold by the dealer whenever he sees fit, settlement to be made therefor at the market

price on any date selected by the seller. Concerning this cus-
tom, the court instructed the jury, in substance, that parties
entering into a contract are supposed to have reference to
known usages and customs which affect the business or subject-
matter thereof, unless such presumption is excluded by the
terms of the agreement itself, and that such existing custom or
usage becomes a part of every contract to which it is applicable,
although not mentioned or alluded to in the negotiations or in
the contract; that, however, such custom or usage will not pre-
vail against the express terms of a contract inconsistent there-
with; that such custom or usage, to be legal, and construed as
part of the contract, must be so well settled and so universally
acted upon as to raise a fair presumption that it was known
to both of the contracting parties and that they contracted in
reference to and in conformity therewith. The court also de-
fined a bailment, and carefully submitted every theory of the
defense to the jury except that of a former acquittal, which was
a question of law, for the court to determine. Many cases are
cited by counsel touching this and other questions discussed, but
the law is too well settled in this state to require the citation
thereof. That the contract, upon the theory of the State, based
upon the testimony of Boever, was a bailment, is perfectly clear.
*Sexton & Abbott v. Graham,* 53 Iowa 181; *Nelson v. Brown,
Doty & Co.,* 53 Iowa 555; *Arthur v. Chicago, R. I. & P. R. Co.,*
61 Iowa 648.

It is also well settled in this state that, where grain is de-
posited with a warehouseman with the understanding that he
is to ship and sell it on his own account, and that he will pay
the depositor the market price at a time fixed by him, or turn
over a like quality and quantity of the grain, it does not con-
stitute a bailment, but a sale. *Johnston v. Browne,* 37 Iowa
200; *Barnes Bros. v. McCrea & Co.,* 75 Iowa 267.

The instructions fully and fairly submitted the defendant's
theory that the transaction was a sale, or that it gave implied
authority to the defendant to sell the grain without any fur-
ther action or consent upon the part of Boever. By these in-
structions, the defendant was given the full benefit of the evi-
dence introduced by him to prove the custom and usage upon
which he relied.

III. One other ground of the motion requires consideration:

that is, that it was conclusively established by the evidence that Boever, subsequent to the sale of the oats, ratified and confirmed the sale, claiming to be the owner of the proceeds and demanding the same from the defendant. On this point the court instructed the jury that if, with knowledge that the oats had been wrongfully sold by the defendant, Boever elected to ratify, affirm, or acquiesce in the sale, such ratification would relate back to the time of such sale, and its legal effect would be the same as if the sale had been originally authorized by him. But, if the claim to the proceeds was made by Boever under the belief that the oats had been sold in conformity to his authorization and direction, such claim would not constitute a ratification of the previous unauthorized sale. The court further instructed the jury that, if Boever subsequently acquired knowledge that his oats had been wrongfully sold, he might still assert his claim for damages for such sale, and such assertion would not constitute a ratification of the defendant's wrongful act. The instruction was full, definite, and explicit, and in all particulars favorable to the defendant.

5. CRIMINAL LAW: instructions: ratification of wrongful act.

Manifestly, none of the grounds of the motion for a directed verdict were good. The foregoing matters were all again raised by the defendant in a motion to discharge the defendant notwithstanding the verdict, in a motion for a new trial, and most of them by exceptions to the instructions and to the refusal of the court to give numerous instructions requested by him. All of the instructions requested by the defendant involved matters covered by what we have already said. The exception to but a single paragraph of the court's charge is argued by counsel.

IV. The court also instructed the jury that:

"A fraudulent intent can seldom be proved by direct evidence; and in the absence of direct evidence, the intent with which an act is done is generally inferred or presumed from all the facts and circumstances attending the doing of the act in question, as disclosed by the evidence. The law presumes a man to intend the reasonable and natural consequences of his acts deliberately and intentionally done."

The foregoing language of the instruction, which is but a part of the paragraph, was excepted to on the ground that the last sentence is misleading, and that the result of his act in sell-

**6. EMBEZZLEMENT: intent: inapplicable instruction.** ing the grain was not intended, nor was it the probable consequence thereof, but that same was due to the financial depression which followed. The exception misconceives the meaning of the instruction. It is true that a man must be presumed to intend the reasonable and natural consequences of his act. The sentence must be read in connection with the instruction as a whole. It does not possess the objectionable features found in the instruction held fatally defective in *State v. Roby*, 194 Iowa 1032, or in *State v. Carmean*, 126 Iowa 291. In a later paragraph of the same instruction the court fully explained to the jury that, in determining the intent with which the defendant sold the oats, it should consider all the evidence, his understanding of the arrangement under which he received them, whether he believed in good faith that he was thereby given the legal right to sell the same, his conversations with Boever relating to the transaction, and his acts and conduct, so far as disclosed by the evidence, together with all the facts and circumstances shown upon the trial bearing thereon. The instruction, as a whole, was entirely fair, and sufficiently favorable to the defendant.

V. During the progress of the trial, the court permitted Boever to testify to certain conclusions, in answer to interrogatories propounded to him, over the defendant's objections. **7. CRIMINAL LAW: trial: improper reception of evidence: curing error.** Later, and before argument to the jury, the court on its own motion stated to the jury that he believed the ruling was erroneous, and called particular attention to each question and answer, stating that proper objection was made thereto, and that he was then convinced that the witness should not have been permitted to testify to the conclusions expressed, and withdrew the answers from the jury, and cautioned them to disregard the same. There was nothing inherently prejudicial in the answers, although we think the objections should have been sustained. The jury must have understood that the evidence was to be disregarded and given no weight in arriving at a verdict. Any error in the admission of this testimony was completely cured by its subsequent withdrawal by the court.

VI. It is also urged by counsel that, upon the whole case, the evidence is insufficient to sustain the verdict. The evidence on many of the vital points in the case is in direct conflict, but

it is not the province of this court to pass upon its weight or the credibility of the witnesses. These are peculiarly the functions of the jury. The argument of counsel for appellant on the facts is persuasive, but the question was clearly for the jury.

Some other questions are insistently discussed by counsel. All have been given careful consideration. We find no error in the record, and the judgment of the court below is—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.