STATE OF IOWA, Appellee, v. MARION McINTYRE, Appellant.

CRIMINAL LAW: New Trial—Inflammatory Appeals in Close Case. Weaving into an address by the county attorney reference to sensational newspaper reports, unwarranted assertions of the defendant's guilt of other offenses, inferences that the State has been prevented from showing all the evidence against the accused, and the inconsequence of a verdict of guilty because of the ease in securing paroles, may require the granting of a new trial, especially (1) when the record reveals such inconsistencies and improbabilities as would fully justify an acquittal, (2) when the case has been three times tried, and (3) when the verdict was clearly a compromise among the jurors.  (See Book of Anno., Vol. I, Sec. 13944, Anno. 128 *et seq.*)

CRIMINAL LAW: New Trial—Inflammatory Appeal Aside Record—Indefinite Objections. The fact that objections to an argument are not *specific* or *persistent* will not be deemed a legal reason for denying a new trial when the argument in question was flagrantly and knowingly improper.  (See Book of Anno., Vol. I, Sec. 13944, Anno. 112 *et seq.*)

RAPE: Intent—Applicable Instruction. It is not erroneous to instruct that the jury has the right to infer that the defendant intended to do that which he voluntarily and willfully did, the charge being rape on a female incapable of consent, and there being evidence that the offense was consummated.

Headnote 1:  16 C. J. pp. 1141, 1143, 1144.  Headnote 2:  16 C. J. p. 1141 (Anno.)  Headnote 3:  33 Cyc. p. 1503 (Anno.)

Headnote 1:  L. R. A. 1918D, 82; 2 R. C. L. 426.  Headnote 3:  22 R. C. L. 1233.

*Appeal from Boone District Court.*—SHERWOOD A. CLOCK,
Judge.

MARCH 15, 1927.

Defendant appeals from a judgment on conviction of assault with intent to commit rape.—*Reversed.*

*Dyer, Jordan & Dyer,* for appellant.

*John Fletcher,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *Walter Canaday,* County Attorney, for appellee.

MORLING, J.—I. Defendant was indicted for statutory rape upon Mildred Ray, then under 16 years of age. The charge and the evidence are that the offense was committed October 31, 1924.

1. CRIMINAL LAW: new trial: inflammatory appeals in close case.

Mildred attained the age of 16 on November 29, 1924. She gave birth to a child on June 25, 1925. The evidence is that the child was premature, and in the doctors' opinion, about an 8-months baby. The defendant argues that the testimony of the prosecuting witness is so incredible that defendant ought not to be convicted upon it, and that there is a lack of corroboration. That someone had sexual intercourse with the prosecuting witness is indisputable; that the intercourse occurred at a time when she was under the age of consent is borne out by all of the testimony; that the offense of rape, therefore, was committed upon her is amply sustained by the evidence. Whether it was committed on the occasion testified to by the prosecuting witness, and was committed by the defendant, is the real subject of controversy. Defendant had been keeping company with Mildred, and at the time in question had an engagement to take her to a dance. Mildred testifies that defendant was supposed to call for her at 9 o'clock that evening; that, around 8 o'clock, when no one was there except an engineeer, sleeping upstairs, defendant came and tried to open the door between the dressing room and bedroom on the ground floor, where she was; that she told him to wait,— that she was dressing; that her little sister came, with whom defendant had some conversation; that, after the sister left, defendant came back into the bedroom; that she was all dressed

except her dress; that she asked him to go out, but he would not, and that he took hold of her in the dressing room, dragged her into the bedroom, and forced her to submit to sexual intercourse. She says that she resisted, fought, pleaded with him, and cried; that she did not scream or call to the man upstairs. The sister testifies that she was in the house, and had the conversation with defendant, as testified to by the prosecuting witness. The engineer sleeping upstairs said that he was aroused about 8:30 or 8:45; that he heard a girl, a couple of times, crying,—cry out; that he thought he heard the girl scream out, and that the voice was that of Mildred. Defendant admits that he was alone with Mildred in the house about 15 minutes, around 8:30, but says that Mildred was dressed, and that he was not in the bedroom; and he denies the circumstances as related by Mildred and her sister. It was for the jury to say, on the testimony of the engineer, whether the crime was committed at the time and place charged, and whether the corroborating evidence sufficiently connected the defendant therewith.

II. With respect to the assignment of error which we are now about to discuss, however, we may say that the evidence on the subject of defendant's guilt contains so many inconsistencies and improbabilities that he might well have been acquitted. Apparently the trial under consideration was a third trial. Though, without controversy, someone had had sexual intercourse with the prosecuting witness, and though, according to the affirmative evidence on the subject, it occurred before she had attained the age of 16 years, and therefore the crime of rape had been committed, the jury found the defendant guilty merely of assault with intent to commit rape. It is in the light of these facts that we now proceed to discuss defendant's contention of misconduct of the county attorney and assistant in their opening and closing arguments. In closing argument, the assistant county attorney said:

"You men within the past two weeks have read in the papers of a similar case in the state of Iowa, where a girl was taken from her home. She didn't cry out, she didn't complain until some year and three months afterwards. Why didn't she cry out? Why didn't she complain to someone? She was in the power and clutches of the man. So was this little girl here.

"Mr. Dyer: Just a moment. We object to the statements

made in the argument of Mr. Doran, referring to another case, for the reason that it is immaterial here, and not a part of the record.

"Court: Keep within the record * * *

"Mr. Doran: He is here charged with raping this girl on the 31st of October.. I will tell you this is not the first time he ever did it, either. Mr. Dyer has brought out another offense, being on the eighteenth, right in this case. Men, I want to tell you that, when Mr. Canaday wrote the indictment,—here in this indictment charging this defendant with this crime,—and it was returned by the grand jury at the September term, it was talked about; but still, if they can hatch up something here to get the jury to disagree, they will have won their case. * * * You are fortunate, men, to be living, to give your daughters the benefit of your experience in the world, and tell them and instruct them. Mildred is unfortunate, in that her daddy is dead. * * * I won't say but what this actor here fooled Mrs. Ray. * * * Mrs. Ray's little girl is not the only girl that has been raped in Boone County, either, the past fifteen months; there are fellows hanging around this court room, anxiously awaiting the verdict of this jury. * * * You are, by the verdict of guilty, going to set an example for the young men and the old men. * * * What is five or ten years in the penitentiary to this defendant? In many cases, a defendant goes and he will be paroled out. Men, they have gone to the penitentiary, but they are out within a few months. I talked with you about paroles, and I want to tell you right now that, if there is anyone or any lawyers who know how the board of parole functions, that defendant's lawyers do. This is the second jury that has had to pass upon this case. There are some features that have come up that did not come up in the first case, and I submit that in the case that has been presented here shows this man is guilty. * * * You can't pick up an evening paper from Des Moines but what you see petitions that have been presented to the governor for the pardon of criminals. Look on the back page and notice it. I want to say in the trial of a criminal case * * * that the State is handicapped. We would like to put the whole thing upon the table before you, but we have to conform to rules. * * * I almost shriek when I think of it. I think of it when I am at home, and look into the eyes of my five-year-old girl.

I shudder, and wonder about life before her; and I want to say that, so long as I have strength in my body to raise my voice against the man who robbed Mrs. Ray's daughter of the thing that is most precious to her, I will fight until I must quit. I don't care to live, don't care to have my daughter live in a world where she has to stand the damnable lust of beings like this defendant, and I don't want you to live in it. * * * Here is another girl. He married her, so when he came into this court before a jury, his lawyers can say, 'Won't it be too bad to take that man from his wife?' If I made any dirty insinuations when I asked him whom he was living with in Omaha, I will apologize publicly for it. * * * Lawyers make mistakes, as well as anybody else; but after the case is over, and you pass upon it, and if you want to ask me any questions,—why, ask the question, and I will tell you.

"Mr. Dyer: That is objected to as very prejudicial, and ask that the counsel be admonished in that connection. There is nothing in the record about it at all.

"Court: Keep within the record.

"Mr. Doran: Counsel on the defendant's side accuse me of getting out of the record. If I get out of the record, I will apologize to the court. Perhaps that was out of the record. I say to you that he is guilty of the crime of rape, and that you will say so by your verdict. I say this case should not be presented to another jury in Boone County. You will now [not?] allow this young fellow to run off and get married and hide behind his wife's skirts."

It is not humanly to be expected that, in the heat and excitement of trial, counsel will always keep strictly within the bounds of the record, or that they will not in some degree yield to the impulse to appeal to sympathy or prejudice. *Whitman v. Chicago, G. W. R. Co.*, 171 Iowa 277. But we think that the appeals to passion and prejudice above set out greatly transcended excusable license of debate. Appeal was made to sensational reports in newspapers. The statement, wholly unsupported by the evidence, was made that the crime charged against the defendant then under consideration was not the only one of which he was guilty. It was urged that other rapes had been recently committed in the county, and that the perpetrators were anxiously awaiting the verdict in this case; that there were

other facts which the rules of evidence did not permit to be disclosed; that the imprisonment that might be inflicted upon the defendant would be inconsequential, as convicts who have gone to the penitentiary are paroled within a few months, and that defendant's lawyers well knew how the board functions. There were references to the defendant's wife and defendant's purpose in marrying her. There was the insinuation that justice had miscarried on former trials. Assertions and denunciations of this character in a case as doubtful as the one before us are peculiarly damaging, and that they were so here may reasonably be inferred from the fact that the jury evidently reached a compromise verdict. It is said that we should presume that the argument was legitimate reply to the argument in behalf of defendant not set out. The improper statements began in the county attorney's opening argument. The closing argument in places (not herein set out) refers to defendant's argument, and apparently is in reply thereto. We think, however, that the statements which we have set out ought not to be presumed to have been called out by anything that defendant's counsel might have said.

The objections made were not specific or persistent. It is well argued by counsel for defendant that such appeals to prejudice and passion place opposing counsel in the dilemma of

2. CRIMINAL LAW: new trial: inflammatory appeal aside: record: indefinite objections.

having to choose between the one evil of endurance and the unknown evil of making objections, which may result only in aggravation of the injury. The assertions under consideration were so manifestly outside of the record that counsel in making them could not well be unaware of that fact, and that they were highly inflammatory. He knew that defendant's counsel was objecting. The court knew it. The only comment made by the court was, "Keep within the record." We think the case is one of that flagrant character that a new trial should be awarded, regardless of the paucity and indefiniteness of the objections. *State v. Peirce*, 178 Iowa 417, 444; cases cited in 16 Corpus Juris 913. See, also, *State v. Nathoo*, 152 Iowa 665, 674; *Hall v. Wolff*, 61 Iowa 559; *State v. Fuller*, 142 Iowa 598; *Whitsett v. Chicago, R. I. & P. R. Co.*, 67 Iowa 150, 160. Chief Justice Ryan well said, in *Brown v. Swineford*, 44 Wis. 282, 292:

"Doubtless the circuit court can, as it did in this case,

charge the jury to disregard all statements of fact not in evidence. But it is not so certain that a jury will do so. Verdicts are too often found against evidence and without evidence, to warrant so great a reliance on the discrimination of juries. And, without notes of the evidence, it may be often difficult for juries to discriminate between the statements of fact by counsel, following the evidence and outside of it. It is sufficient that the extra-professional statements of counsel may gravely prejudice the jury and affect the verdict. The profession of the law is instituted for the administration of justice. The duties of the bench and bar differ in kind, not in purpose. The duty of both alike is to establish the truth and to apply the law to it. It is essential to the proper administration of justice, frail and uncertain at the best, that all that can be said for each party, in the determination of fact and law, should be heard. Forensic strife is but a method, and a mighty one, to ascertain the truth and the law governing the truth. It is the duty of counsel to make the most of the case which his client is able to give him; but counsel is out of his duty and his right, and outside of the principle and object of his profession, when he travels out of his client's case and assumes to supply its deficiencies. Therefore is it that the nice sense of the profession regards with such distrust and aversion the testimony of a lawyer in favor of his client. It is the duty and right of counsel to indulge in all fair argument in favor of the right of his client; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. But an advocate may make himself the *alter ego* of his client, and indulge in prejudice in his favor. He may even share his client's prejudices against his adversary, as far as they rest on the facts in his case. But he has neither duty nor right to appeal to prejudices, just or unjust, against his adversary, *dehors* the very case he has to try. The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof. It may sometimes be a very difficult and delicate duty to confine counsel to a legitimate course of argument. But, like other difficult and delicate duties, it must be

performed by those upon whom the law imposes it. It is the duty of the circuit courts, in jury trials, to interfere in all proper cases of their own motion. This is due to truth and justice. And if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or for a reversal in this court.''

We think that, under the circumstances of this case, the trial court should have granted a new trial.

Error is assigned to the sixth instruction, which in substance told the jury that intent is often incapable of direct proof, but may frequently be ascertained from just and reasonable inferences; that the jury had the right to infer that a man intends to do that which he voluntarily does, and intends all the natural, direct, probable, and usual consequences of his own acts. The defendant founds his objection on *State v. Roby*, 194 Iowa 1032. That case is not in point. The charge there was assault with intent. Consummation of the intent was not claimed or shown. The court in this case was charging upon an indictment for rape on a female incapable of consent, in a case in which there was evidence of consummation. It was not error in such case for the court to tell the jury that they had the right to infer, with respect to the commission of such a crime, that the defendant intended to do that which he voluntarily and willfully did. None of the other assignments of error demand discussion.

3. RAPE: intent: applicable instruction.

The judgment is—*Reversed.*

EVANS, C. J., and DE GRAFF and ALBERT, JJ., concur.