STATE OF IOWA, Appellee, v. THOMAS SAUERBRY, Appellant.

No. 46254.

JULY 27, 1943.

REHEARING DENIED SEPTEMBER 27, 1943.

Alex Holmes, of Strawberry Point, for appellant.

John M. Rankin, Attorney General, Don Hise, Assistant Attorney General, and H. J. Williamson, County Attorney, for appellee.

GARFIELD, J.—Defendant was charged by county attorney's information with larceny of a domestic animal, in violation of section 13015, Code, 1939. A jury found him guilty and he was sentenced to the penitentiary. He appeals.

I. Defendant challenges the sufficiency of the evidence. The animal in question, a heifer weighing about seven hundred pounds, belonged to a Mrs. Chrystal, who had placed it in a pasture within a half mile from the farm home of one Raymond. On a Sunday morning the heifer had strayed onto the public highway adjoining the Raymond farm. It was also in the Raymond farmyard for a time. Raymond went to the home of defendant, a neighbor, and asked him and his housekeeper to come up and help him fix a pump and "butcher this heifer—he said it had a broken leg." Defendant and his housekeeper went to the Raymond farm before noon. The killing and butchering of the animal, which had no broken leg or other defect, was not attempted until after dark, although Mrs. Raymond testified that defendant and one Jeffries took a gun and "started out in daylight to get it, but didn't kill the calf and said they didn't have nerve enough."

About ten o'clock that evening Raymond, his wife, and defendant went out onto the highway in Raymond's pickup truck to get the heifer. Defendant's housekeeper drove defendant's car. The animal was found about eighteen rods away at the side of the road. Defendant shot it three times, using both a rifle and shotgun. The heifer was then loaded into the pickup and

at defendant's suggestion they drove four miles to Manchester, where the father of defendant's housekeeper lived. The father refused their request to let them butcher the animal in his garage. They then returned to the Raymond farm and butchered the heifer, cutting the meat into small pieces to be cooked and canned.

About two or three a. m. the butchering was finished. The head, hide, feet, and entrails were then put in burlap bags, sewed together, and loaded into the pickup. Defendant, with his housekeeper, drove two to three miles from the Raymond farm and left the bundle behind some bushes inside a pasture fence. Leaves and straw were put inside as well as over the bundle. Raymond had asked defendant to dump the bundle into the river.

About nine or ten a. m. on Monday defendant and his housekeeper returned to Raymond's with the pickup. Defendant told Raymond he had "ditched it." The Raymonds were then cooking and canning the meat. Defendant's housekeeper helped them. Raymond gave eleven quarts of the meat and the liver and heart to defendant, who paid Raymond nothing. This meat was cooking at defendant's home when the sheriff came there that afternoon. The bundle containing the remains of the animal had been discovered that same day by a farmer who was fixing the fence across the road. He reported the matter to the sheriff and the arrest of defendant followed.

Defendant and Raymond were good friends who visited back and forth. They had helped each other butcher before. The jury could have found defendant knew what livestock Raymond owned. Mrs. Raymond testified she knew the animal "didn't belong to any of us." Defendant as a witness said he thought it was Raymond's heifer but admitted he questioned Raymond as to its ownership and was reluctant to help kill and butcher it.

While there was other testimony, the foregoing is a fair summary. Of course, there was some dispute in the evidence. Defendant argues that he was merely doing an innocent, neighborly act. The vital question was whether defendant knew the heifer did not belong to Raymond. Under section 12895, Code, 1939, all persons concerned in the commission of a public offense, whether they directly commit the act, or aid and abet its com-

mission, are punishable as principals. The court so instructed the jury and no complaint thereof is made. We think the question of defendant's guilt was for the jury. There are too many circumstances inconsistent with innocence to justify a holding that the verdict is without sufficient support.

II. Defendant's remaining complaints deal with the court's instructions.

Defendant assigns as error the refusal of his requested instruction that the filing of the county attorney's information is not evidence and should not be considered by the jury. While the request was proper and might well have been given, we are not prepared to hold, in view of the instructions given, that its refusal was reversible error. The jury was fully instructed regarding the presumption of innocence, burden of proof, and reasonable doubt.

The authorities do not agree as to the necessity of giving such a request as defendant submitted. See 23 C. J. S. 773, 774, section 1217. Apparently supporting defendant's contention that such a request must not be refused are Cooper v. United States, 8 Cir., Iowa, 9 F. 2d 216, and Nanfito v. United States, 8 Cir., Neb., 20 F. 2d 376. Also holding that such requests were improperly refused are Kellar v. State, 192 Ind. 38, 134 N. E. 881, and People v. Krittenbrink, 269 Ill. 244, 109 N. E. 1005, but the decisions are based in part on the fact that instructions given on the presumption of innocence were either incorrect or inadequate.

We think it is the better view, supported by the weight of authority, that ordinarily it is not reversible error to refuse a requested instruction that the formal charge is no evidence of guilt, where the jury is fully instructed on the presumption of innocence, burden of proof, and reasonable doubt. Among the authorities to that effect are Sconyers v. United States, 5 Cir., Tex., 54 F. 2d 68 [certiorari denied 285 U. S. 554, 52 S. Ct. 410, 76 L. Ed. 943]; Robilio v. United States, 6 Cir., Tenn., 291 F. 975 [certiorari denied 263 U. S. 716, 44 S. Ct. 137, 68 L. Ed. 522]; Stanley v. State, 187 Ark. 779, 62 S. W. 2d 968; People v. Lloyd, 97 Cal. App. 664, 275 P. 1010; Kelly v. Commonwealth, 259 Ky. 770, 83 S. W. 2d 489; Palin v. State, 38 Neb. 862, 57

N. W. 743, 745; Miller v. State, 139 Wis. 57, 119 N. W. 850, 857. See, also, State v. Atkins, 136 La. 844, 67 So. 926, 928.

This request was at least somewhat of a cautionary nature. There is no intimation in the instructions given that the accusation might be considered as evidence, nor is it claimed the jury had any misconception in this regard. Having some application here is the rule that the trial court has considerable discretion whether to give or refuse requested cautionary instructions. Siesseger v. Puth, 211 Iowa 775, 780, 234 N. W. 540.

III. Instruction 10, on the weight to be given defendant's testimony, states that this is a question for the jury to determine, as in the case of other evidence. The jury was elsewhere fully instructed as to the tests for determining credibility. Instruction 10 contains the statement:

"You are not required to receive the testimony of the defendant as true, but to give it full and careful consideration, and determine whether it or any part of it is true or false, and whether such testimony is given by the defendant in good faith or for the purpose of avoiding conviction."

It is claimed this unfairly singles out and belittles defendant as a witness. This argument has been rejected in a number of cases where like instructions have contained substantially the same statement. State v. Mikesh, 227 Iowa 640, 644, 645, 288 N. W. 606, and cases cited; State v. Parsons, 209 Iowa 540, 542, 228 N. W. 307; State v. Mecum, 95 Iowa 433, 437, 438, 64 N. W. 286. For a full discussion of instructions on credibility of the accused as a witness, see annotation 85 A. L. R. 523.

IV. Part of Instruction 5 informed the jury that intent is seldom capable of direct proof, that "you have a right to infer or presume he [defendant] intended to do that which he voluntarily did and that he intended the probable and natural results to follow his acts deliberately and intentionally done which ordinarily follow such acts," that the question of intent must frequently be ascertained by such reasonable inferences from the evidence as the guarded judgment of a cautious man would ordinarily draw therefrom.

Defendant contends this instruction assumes he had done something from which a criminal intent could be inferred and

in effect states that such an intent might be presumed from the fact that he innocently assisted his neighbor in butchering the heifer. State v. Carmean, 126 Iowa 291, 300, 301, 102 N. W. 97, 100, 106 Am. St. Rep. 352, and State v. Roby, 194 Iowa 1032, 1047, 188 N. W. 709, are cited. Neither decision is in point. In State v. Carmean, an embezzlement case, the jury was told "that the criminal intent might be inferred from the inevitable effect of the act done, or from opportunity of knowledge as to the conduct of the business." It was held these facts were not "sufficient of themselves to impute criminal intent to the defendant." State v. Roby, supra, was a case of assault with intent to rape where the consummated act was not claimed or shown.

An instruction containing a statement similar to the challenged part of Instruction 5 was approved in State v. McIntyre, 203, Iowa 451, 458, 212 N. W. 757, where there was a conviction of assault with intent to rape under an indictment for statutory rape, and there was evidence that the act was consummated, and in State v. Folger, 204 Iowa 1296, 1304, 1305, 210 N. W. 580, a case of embezzlement. See, also, State v. Crandall, 227 Iowa 311, 316, 317, 288 N. W. 85, and cases cited, and 23 C. J. S. 783, section 1222. We think defendant misconceives the purport of Instruction 5 and that his exception cannot be sustained. It is true that a man must be presumed, in the absence of contrary evidence, to intend the probable and natural consequences of acts *deliberately and intentionally* done. State v. Folger, supra.

■ V. Instruction 8 on direct and circumstantial evidence is almost identical with Instruction 9 quoted in State v. DeKoning, 223 Iowa 951, 954, 274 N. W. 25, 26, 27. While it is not claimed the instruction is erroneous as an abstract statement, it is argued it should not have been given here because the evidence was all direct and not circumstantial. We think, however, the instruction was proper. The case is essentially one of circumstantial evidence. As defendant argues, it is not a crime to help a neighbor butcher a calf. Whether defendant committed the crime of larceny depended largely on whether he knew the animal did not belong to Raymond. The only evidence of such knowledge was circumstantial. Defendant asserted in his motion for directed verdict: "There is no direct evidence in

this record proving the intent to steal, which is an essential element of the crime.''

■ VI. Finally, it is contended the last paragraphs of Instructions 1 and 9 respectively authorize a conviction because of a lack of evidence. Instruction 1 deals principally with the presumption of innocence and states that defendant is presumed innocent until proven guilty beyond a reasonable doubt; that this presumption prevails at all stages of the trial and until every element necessary to constitute the crime charged has been established by the State beyond a reasonable doubt. The last paragraph, of which complaint is made, reads substantially:

''It is not necessary, however, that the state establish every evidential fact in the case beyond a reasonable doubt; but if upon a consideration of the whole case and all of the evidence adduced therein, or the lack of evidence, you have no reasonable doubt of the guilt of the defendant, you should find the defendant guilty * * *. Otherwise you should by your verdict find the defendant not guilty.''

Instruction 9, on reasonable doubt, is:

''No mere weight of evidence is sufficient to convict the defendant, unless it excludes all reasonable doubt of his guilt, and the proof of guilt must be inconsistent with any other rational conclusion.

''A reasonable doubt is such doubt as fairly and naturally arises in your minds after fully and carefully weighing and considering all of the evidence introduced, as well as the want of evidence in the case, when viewed in the light of all the facts and circumstances. It must be real, not captious or imaginary, or arising from sympathy, and it must be a doubt which, without being sought after, fairly and naturally arises in the mind from a careful consideration of all of the evidence introduced in the case, or the want of evidence, when viewed in the light of all the circumstances.

''The proof is sufficient to sustain a conviction if it establishes the guilt of the defendant to a reasonable moral certainty —that is, such a moral certainty as fully and fairly convinces your judgment and understanding as jurors of the guilt of the

defendant, after conscientious consideration of all the facts and circumstances, as shown by the evidence, or want of evidence, in the case.''

We have held in a number of recent cases that it is reversible error to fail to instruct that a reasonable doubt may arise from a lack or want of evidence. See State v. Parkin, 230 Iowa 991, 299 N. W. 917, and cases cited. See, also, 23 C. J. S. 852, section 1283. Apparently, the trial judge, in Instructions 1 and 9, was attempting to comply with this rule. It is stated twice in Instruction 9 that a reasonable doubt may arise from the want of evidence.

In State v. Matthes, 210 Iowa 178, 180, 230 N. W. 522, 523, the jury was instructed:

''If, upon a full and fair consideration of all the evidence before you, or from any lack of evidence upon any material fact, you are abidingly satisfied and convinced that the material matters necessary to establish the guilt of the defendant are true, then you have been convinced beyond a reasonable doubt.''

This was held to be reversible error as authorizing a conviction upon a lack of evidence and as tending to place a burden upon the accused which the law does not require him to assume. Of course, only an acquittal, not a conviction, may be based upon a lack of evidence. While the challenged portions of Instructions 1 and 9 are worded somewhat unfortunately and are not to be commended, we think they are distinguishable from the instruction condemned in State v. Matthes and do not constitute reversible error in the respect claimed.

Instruction 1 deals mainly with the presumption of innocence, but goes on to state that every evidential fact need not be proven beyond a reasonable doubt and that a consideration of the whole case includes considering the evidence as well as the lack thereof. But the jury would scarcely be led to believe therefrom that a conviction could be based upon a lack of evidence.

The important statement in the challenged part of Instruction 9 is: ''The proof is sufficient to sustain a conviction if it establishes the guilt of the defendant to a reasonable moral cer-

tainty.'' The balance of the instruction is descriptive of the term ''moral certainty''—''that is, such a moral certainty as fully and fairly convinces your judgment * * * of the guilt of the defendant, after conscientious consideration of all the facts and circumstances, as shown by the evidence, or want of evidence * * *.'' But under the instruction a conviction is authorized only if *the proof is sufficient* to establish guilt beyond a reasonable doubt. When considered in connection with the first two paragraphs of Instruction 9, the language used could hardly have been taken to justify a conviction based upon lack of evidence. The first paragraph states: ''No mere weight of evidence is sufficient to convict the defendant, unless it excludes all reasonable doubt of his guilt, and the proof of guilt must be inconsistent with any other rational conclusion.''

Suppose the instruction read: ''If, after conscientious consideration of all the facts and circumstances as shown by the evidence, or of the want of evidence, in the case, you find the proof establishes the guilt of the defendant to a reasonable moral certainty, it is sufficient to sustain a conviction.'' While even this language is not recommended, we think it would not authorize a conviction based upon a lack of evidence. The wording used by the trial court is not so different in meaning from that of the supposed language as to justify a reversal.

The judgment is—Affirmed.

MULRONEY, C. J., and BLISS, OLIVER, HALE, SMITH, and MANTZ, JJ., concur.

MILLER and WENNERSTRUM, JJ., dissent.

MILLER, J. (dissenting)—I cannot agree with Division VI of the opinion of the majority herein and respectfully dissent therefrom.

As stated by the majority, the guilt or innocence of defendant depended largely on whether he knew that the heifer did not belong to Raymond. He denied such knowledge and the only evidence of his having such knowledge was circumstantial. Instruction 5 informed the jury that one's intent must frequently be ascertained by such reasonable inferences from the evidence as

the guarded judgment of a cautious man would ordinarily draw therefrom and that the jury had a right to presume defendant intended to do what he voluntarily did. The decisive question was whether defendant intended to kill and dispose of a heifer that did not belong to Raymond. He did kill it, and helped dispose of it. The only dispute was over the effect to be given the circumstantial evidence as to his information concerning the ownership of the heifer.

The majority opinion recognizes that want or lack of evidence may support a reasonable doubt that would warrant an acquittal and that the court was required to so advise the jury. The majority opinion also recognizes that want or lack of evidence cannot be made the basis for a conviction. The State must prove its case by evidence, not by lack of it. Defendant contends that Instructions 1 and 9 are subject to interpretation that the State can prove its case by lack of evidence. The majority opinion recognizes that such a statement to the jury would be error but decides that no such statement was made. I cannot agree with such decision.

Instruction 9 deals with the sufficiency of the proof to sustain a conviction. The discussion of reasonable doubt therein relates to the sufficiency of the evidence to convict. The last paragraph of Instruction 9 consists of but one sentence. As quoted by the majority opinion, it commences with the words: "The proof is sufficient to sustain a conviction if it establishes the guilt of the defendant to a reasonable moral certainty * * *." The words "want of evidence," appearing at the end of the sentence might well be considered by the jury as relating to the sufficiency of the proof to convict and a reasonable moral certainty of guilt. This is particularly so because the jury was told that such moral certainty of guilt may arise from "consideration of all the facts and circumstances, as shown by the evidence, or want of evidence." Facts to support a moral certainty of guilt cannot be shown by want of evidence. An erroneous statement of the law was given, in my judgment.

Prejudice to defendant is clear. The State used nine witnesses. Defendant alone testified in his own behalf. If want of evidence was associated with scarcity of witnesses, defendant was at a decided disadvantage. The vital issue was defendant's

knowledge as to the ownership of the heifer. The State's evidence was circumstantial. Defendant's testimony was brief. The jury might have felt that many details, that would aid them in reaching a decision, were omitted. The State had the burden of furnishing sufficient details to satisfy the jury to a reasonable moral certainty of guilt. Want of evidence should inure to the benefit of defendant, not to that of the State.

In the case of State v. Matthes, 210 Iowa 178, 180, 230 N. W. 522, 523, the sentence of the instruction there challenged and quoted in the majority opinion herein was much like the last sentence of Instruction 9 herein. After quoting the instruction in that case, this court states:

"This instruction is somewhat ambiguous. It cannot be sustained. From the last sentence of said instruction, which we have italicized, the jury may well have understood that if, upon a full and fair consideration of all of the evidence, or *from a lack of evidence upon any material fact,* they were abidingly satisfied and convinced of the guilt of the appellant, then they were convinced beyond a reasonable doubt. The correct rule is, of course, that if, from a lack of evidence, the jury entertains a reasonable doubt of the guilt of the defendant, they are to *acquit* him; but this is quite a different thing from *convicting* a defendant upon a *lack of evidence upon any material fact.* The jury might readily have construed this instruction to place a burden upon the appellant which the law does not require him to assume. * * *

"The instruction in question would seem to authorize a jury to be convinced beyond a reasonable doubt from a *lack* of evidence upon any material fact. Such cannot be the law, and the instruction as given was not only erroneous, but obviously was prejudicial to the appellant. It was error to give it."

The foregoing language would seem to be applicable to the record herein. I would hold that the giving of Instruction 9 was reversible error.

It may be that defendant was guilty and that his conviction is a just result. But, under our way of life, he was entitled to a fair trial. He should not be deprived of his liberty without it. He testified to facts which would warrant an acquittal. The

jury passed judgment on his testimony. To aid them in performing such function, the court was required to correctly instruct them on the law. The instructions were not correct, in my judgment. Instruction 9 was erroneous and highly prejudicial. It vitiates the verdict. I would reverse.

WENNERSTRUM, J., joins in the foregoing dissent.